JOURNAL ENTRY AND OPINION
{¶ 1} Mother, B.G., appeals from an order of Juvenile Court Judge John W. Gallagher that granted custody of her son to Cuyahoga County Department of Children and Family Services ("CCDCFS"). She contends that the order is not in the best interest of the child and against the manifest weight of the evidence. We affirm.
 {¶ 2} From the record we glean the following: In February of 2002, CCDCFS received a referral from a Cleveland Clinic employee who stated that, between July 2001 and February 2002, B.G. failed to take her then eleven-month-old son, L.F., to eleven separate doctor appointments. Because he suffers from chronic liver failure, known as Alagille Syndrome, hypertension, hyperlipidemia, developmental delays, eczema and bursitis,[1] the caller expressed concern that the failure to keep the appointments could jeopardize the child's chances of receiving a liver transplant.
 {¶ 3} CCDCFS took emergency custody of the child and moved for temporary custody alleging starvation, physical abuse and neglect, and cited to the missed medical appointments. The child was then placed with his maternal aunt, a registered nurse, where he remains to date.
 {¶ 4} A case plan was developed for B.G. that required her to attend all of her son's medical appointments, attend counseling, spend ten to fifteen hours per week with her son so that she could learn to provide for his daily care, attend parenting classes, and find suitable housing.
 {¶ 5} In January 2003, CCDCFS moved to modify temporary custody to permanent custody and, following a trial in September of 2003, the judge awarded permanent custody to CCDCFS. B.G. appeals in a single assignment of error set forth in the appendix to this opinion.
 {¶ 6} B.G. claims that her compliance with the case plan shows that she is attempting to remedy the conditions that led up to her son's removal, and urges, as an alternative to the termination of parental custody, a planned permanent living arrangement that would allow her to improve in her parenting skills.
 {¶ 7} R.C. 2151.414 sets forth a two-prong analysis to be applied for a determination that permanent custody should be granted to an agency: First, the judge must find by clear and convincing evidence that one of the factors enumerated in R.C.2151.414(B)(1) exists. Second, that the award of permanent custody is in the best interest of the child.
 {¶ 8} Clear and convincing evidence is "that measure or degree of proof which is more that a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."[2] If a burden of proof must be met with clear and convincing evidence, a reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy that burden of proof.[3]
 {¶ 9} The record reflects that L.F. has been in the temporary custody of CCDCFS since February of 2002, and, therefore, met the requirement outlined in R.C. 2151.414(B)(1)(d) which states:
{¶ 10} "(d) The child has been in the temporary custody of oneor more public children services agencies or private childplacing agencies for twelve or more months of a consecutivetwenty-two month period ending on or after March 18, 1999."
 {¶ 11} The judge must next find that permanent custody is in the best interest of the child as outlined by R.C. 2151.414, which states in relevant part:
 {¶ 12} "(D) In determining the best interest of a child at ahearing held pursuant to division (A) of this section or for thepurposes of division (A)(4) or (5) of section 2151.353[2151.35.3] or division (C) of section 2151.415 [2151.41.5] ofthe Revised Code, the court shall consider all relevant factors,including, but not limited to, the following: (1) The interactionand interrelationship of the child with the child's parents,siblings, relatives, foster caregivers and out-of-home providers,and any other person who may significantly affect the child; (2)The wishes of the child, as expressed directly by the child orthrough the child's guardian ad litem, with due regard for thematurity of the child; (3) The custodial history of the child,including whether the child has been in the temporary custody ofone or more public children services agencies or private childplacing agencies for twelve or more months of a consecutivetwenty-two month period ending on or after March 18, 1999; (4) Thechild's need for a legally secure permanent placement and whetherthat type of placement can be achieved without a grant ofpermanent custody to the agency; (5) Whether any of the factors indivisions (E)(7) to (11) of this section apply in relation to theparents and child."[4]
 {¶ 13} In his journal entry, the judge first noted that L.F. had been in the custody of CCDCFS for twelve or more months, and that B.G. had demonstrated a lack of commitment toward her son by failing to regularly visit him, and failing to take advantage of services that would allow her to learn how to provide adequate care for the child's medical needs.
 {¶ 14} He further noted that,
{¶ 15} "the parents have failed continuously and repeatedly tosubstantially remedy the conditions causing the child to beplaced outside the home and that the parties have failed tosubstantially benefit from services, and therefore have notreduced the risk."
 {¶ 16} He also noted the child's severe medical history and found that a return to his parents' custody would jeopardize his health, referencing the recommendation of the child's GAL that he could not now or in the immediate future be reunited with either parent.
 {¶ 17} B.G. disputes these findings and claims that she has demonstrated a growing commitment toward her son through both her visitations and her attempt to gain training as a nurses' aide. She contends that any gaps between visitations were because of her lack of funds or time conflicts in an attempt to comply with other areas of her case plan, and counters that the bond she has with her son supports the denial of CCDCFS' motion for permanent custody. She admits to missing only three of her son's doctor appointments, and then only because of her work schedule. She submits that, based on these intervening criteria, permanent custody is against the manifest weight of the evidence.
 {¶ 18} We review a manifest weight challenge to determine whether some competent, credible evidence supports the judgment.[5] The criminal standard also focuses on the credibility of evidence, allowing a judge or reviewing court to consider not only the sufficiency of evidence, but the quality of evidence introduced.
 {¶ 19} Although a juvenile custody proceeding is not a criminal matter, it is consistently recognized as implicating[6] important rights deserving of more scrutiny than the ordinary civil proceeding.[7] Therefore, to the extent the civil manifest weight review is less demanding than that in criminal matters, in juvenile proceedings such review should more closely approximate the criminal standard.[8]
During trial there was testimony by L.F.'s maternal aunt that, at eleven months of age, he weighed only eleven pounds and was on several medications. She learned that he was not regularly receiving the prescribed Vitamin K which aids blood in clotting, and which led to his hospitalization after being scratched, because he bled continuously for twelve hours. She noted that the child spends twelve hours each day in the care of a licensed practical nurse, Tequila Franklin, and requires significant and detailed attention while at home. She described B.G.'s sporadic and argumentative visitations which ultimately led to her request that B.G. not be permitted home visitations, and expressed her concern that B.G. needed supervision when administering her son's medication. She testified that she is willing to adopt the child should permanent custody be awarded to CCDCFS.
 {¶ 20} Further, each medical provider who testified expressed concerns over B.G.'s ability to care for her child in the appropriate manner. Juvenile Court clinician Dr. Frank Ezzo testified that reunification was not in the child's best interests and referenced one incident during his evaluation of B.G. where she was unable to answer questions regarding the administration of children's cough syrup despite being given the instructions and being able to use them as a reference when answering his questions.
 {¶ 21} Franklin testified that she cares for L.F. twelve hours a day, six days a week and, although she offered to transport B.G. to and from her house, B.G. rarely requested it. She then spoke about his need for constant care and for a routine in handling his multiple medications, a statement supported by Helene Whittingham, a registered nurse at the Cleveland Clinic Children's Hospital. Whittingham explained that L.F. currently receives fourteen medications, and that it was exceedingly important that he receive each medication at the appropriate time during the day.
 {¶ 22} Further, social worker Andrea Krist expressed concerns over B.G.'s poor visitations and countless absences from scheduled counseling sessions and parenting classes. She stated that the only portion of the case plan that B.G. completed was to find appropriate housing through Cleveland Metropolitan Housing Authority ("CMHA").
 {¶ 23} In a written report to the judge, Linda Julian, the child's GAL, expressed her concerns about the mother's ability to provide consistent care for a medically fragile child, and recommended an award of permanent custody to CCDCFS.
 {¶ 24} B.G. urges an extension of temporary custody, such as that imposed by this Court in In re N.B.[9] where we found that the mother had demonstrated a genuine commitment toward her children by regularly visiting and communicating with them and a desire to provide them with basic necessities. However, such is not the case here.
 {¶ 25} The reason for B.G.'s original referral was based on her failure to take her son, who has a chronic liver problem, to his scheduled doctor appointments on eleven separate occasions, and by doing so, jeopardized his chances for receiving a transplant. After her son was removed, Franklin provided her with limitless opportunities for her to visit and learn how to care for him, even providing round trip transportation for the visits, yet B.G. failed to take advantage of this offer. She consistently missed counseling appointments and parenting classes, with the only explanation for her absences being that she was forgetful.[10]
 {¶ 26} The record lacks any indication that she has sufficiently complied with her case plan, or that she has taken steps to learn how to care for her son's medical needs, up to and including the possibility of a liver transplant. B.G. maintains that she trained as a nurses aide to better care for her son, yet left this position after less then four months and has not obtained full state certification because of a lack of funds.[11]
 {¶ 27} We find that the judge complied with R.C. 2551.414(D)(1)-(5) and that his decision is supported by the manifest weight of the evidence. This assignment of error lacks merit.
Judgment affirmed.
 APPENDIX: "I. The juvenile court committed error to the prejudice ofappellant contrary to the manifest weight of the evidence indetermining a grant of permanent custody to ccdcfs to be in thebest interest of the child."
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kenneth A. Rocco, J., concur
 Corrigan, A.J., concurs in Judgment Only
[1] Transcript at 29, 34, 37.
[2] Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118, paragraph three of the syllabus; In re Adoption of Holcomb
(1985), 18 Ohio St.3d 361, 368, 481 N.E.2d 613, 620.
[3] In re Adoption of Holcomb, supra.
[4] R.C. 2151.414(D)(1)-(5).
[5] C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
[6] State v. Thompkins, 78 Ohio St.3d 380, 386-387,1997-Ohio-52, 678 N.E.2d 541, 546-547; State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721.
[7] See, In re Heston (1998), 129 Ohio App.3d 825, 827,719 N.E.2d 93, 95 (right to effective assistance of counsel).
[8] In re M.M. (February 7, 2002), Cuyahoga App. No. 79947, 2002-Ohio 472.
[9] (July 10, 2003), Cuyahoga App. No. 81392, 2003-Ohio-3656.
[10] Transcript 09/03/03 at 156.
[11] Transcript 09/03/03 at 155.